Case No. 19-11546-EE

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

**GREG TOLAR, REID TOLAR and ANDREW TOLAR,**

*Appellants*,

v.

**MARION BANK AND TRUST,**

*Appellee.*

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
(District Court No. 2:13-cv-00132-MHH)**

---

**BRIEF OF APPELLEE
MARION BANK AND TRUST**

---

Forrest S. Latta
Kathryn M. Willis
Christopher S. Burkhalter
BURR & FORMAN LLP
11 North Water Street
Suite 22200, RSA Tower
Mobile, Alabama 36602
Telephone: (251) 344-5151

R. Scott Williams
BURR & FORMAN LLP
420 North 20th Street
Suite 3400 Wells Fargo Tower
Birmingham, Alabama 35203
Telephone: (205) 251-3000

**Attorneys for Appellee Marion Bank and Trust**

No. 19-11546-EE

# IN THE UNITED STATES COURT OF APPEAL
# FOR THE ELEVENTH CIRCUIT

Greg Tolar, et al.,

*Appellant,*

vs.

Marion Bank and Trust,

*Appellee.*

## APPELLEE'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Counsel of record for the appellee certify that the following persons have an interest in the outcome of this appeal. The appellee makes these representations for the Judges of this Court to evaluate possible disqualification or recusal:

Atlantic Casualty Insurance Company – affiliate of Auto-Owners Insurance Company

Auto-Owners Insurance Company – insurer of Appellee

Bradley Arant Boult Cummings, LLP – Defendant

Burkhalter, Christopher S. – attorney for Appellee

No. 19-11546-EE

*Greg Tolar, et al. v. Marion Bank and Trust*

Burr & Forman LLP – attorneys for Appellee

Guerrier, Charles E. – attorney for Appellants

Haikala, Madeline Hughes – United States District Judge, U.S. District Court for the Northern District of Alabama

Haynes, Alicia K. – attorney for Appellants

Haynes & Haynes, P.C. – attorneys for Appellants

Latta, Forrest S. – attorney for Appellee

Marion Bank and Trust Company – Appellee

Ott, John E. – Chief United States Magistrate Judge, U.S. District Court for the Northern District of Alabama

Owners Insurance Company – affiliate of Auto-Owners Insurance Company

Southern Owners Insurance Company – affiliate of Auto-Owners Insurance Company

Sparks, Dan – expert witness for Marion Bank

Taylor, Conrad – Defendant

No. 19-11546-EE

*Greg Tolar, et al. v. Marion Bank and Trust*

Tolar, Andrew Frank – Appellant

Tolar, Gregory Eugene – Appellant

Tolar, Reid Gregory – Appellant

Walthall, Robert C. – member of Board of Directors of Marion Bank and Trust Company; partner in law firm Bradley Arant Boult Cummings LLP

Williams, Ronald Scott – attorney for Appellee

Willis, Kathryn Morris – attorney for Appellee

## **CORPORATE DISCLOSURE STATEMENT**

Auto-Owners Insurance Company is a mutual company, not a stock company, and has no shareholders. Owners Insurance Company, Southern Owners Insurance Company and Atlantic Casualty Insurance Company are corporations that are wholly owned by Auto-Owners and they are not publicly traded.

Marion Bank and Trust Company is not publicly traded.

No. 19-11546-EE

*Greg Tolar, et al. v. Marion Bank and Trust*

s/ Forrest S. Latta
FORREST S. LATTA
KATHRYN M. WILLIS
R. SCOTT WILLIAMS
CHRISTOPHER S. BURKHALTER

**OF COUNSEL**
Forrest S. Latta
Kathryn M. Willis
Christopher S. Burkhalter
BURR & FORMAN LLP
11 North Water Street
Suite 22200, RSA Tower
Mobile, Alabama 36602
Telephone: (251) 344-5151

R. Scott Williams
BURR & FORMAN LLP
420 North 20th Street
Suite 3400 Wells Fargo Tower
Birmingham, Alabama 35203
(205) 251-3000

## STATEMENT REGARDING ORAL ARGUMENT

Counsel for Appellee Marion Bank submit that oral argument is unnecessary and would not significantly aid in the resolution of this case. However, counsel defers to the court on whether oral argument nonetheless would be helpful.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ...................................... C-1

STATEMENT REGARDING ORAL ARGUMENT ...................................i

TABLE OF CONTENTS ......................................................ii

TABLE OF AUTHORITIES.................................................iv

STATEMENT OF JURISDICTION.........................................vii

STATEMENT OF THE ISSUES............................................1

STATEMENT OF THE CASE ..............................................2

    I.    The Course of Proceedings and Disposition Below ...............5

    II.    Statement of the Facts ........................................ 6

    III.    Standard of Review .............................................. 17

SUMMARY OF THE ARGUMENT .......................................17

ARGUMENT ....................................................................22

    I.    Appellants failed to establish a *prima facie* case of
    retaliation for any alleged adverse action. ...........................26

        A.    The Bank's AUFTA claim was reasonably
        justified given Greg Tolar's attempt to shield his
        assets from collection ...................................................26

        B.    The Bank had legitimate reasons for opposing
        Greg Tolar's proposed bankruptcy plan .....................34

        C.    The Bank rightly stopped sending Greg Tolar
        legal work after he became directly adverse to it ......38

CONCLUSION ...................................................................42

CERTIFICATE OF COMPLIANCE.......................................45

CERTIFICATE OF SERVICE.................................................................. 46

# TABLE OF AUTHORITIES

**Cases**

*Akanthos Capital Mgmt., LLC v. Atlanticus Holdings Corp.*, 734 F.3d 1269 (11th Cir. 2013) .......................................17

*Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997)....................12

*Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731 (1983)....18, 27

*Braley v. Spragins et al.*, 128 So. 149 (Ala. 1930) .........................19, 29

*Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160 (11th Cir. 2006).......................................................................21, 25

*Burlington Northern & Santa Fe Ry., Co. v. White*, 548 U.S. 53 (2006)...........................................................................................22

*Chapman v. AI Transp.*, 229 F.3d 1012 (11th Cir. 2000).........20, 24, 25

*Combs v. Plantation Patterns*, 106 F.3d 1519 (11th Cir. 1997).............25

*Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603 (11th Cir. 1994) ...........................................................................................25

*Diaz v. Fla.*, 219 F. Supp. 3d 1207 (S.D. Fla. 2016) .............................23

*Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295 (11th Cir. 2016) ......................................................................................22, 25

*Godwin v. WellStar Health System, Inc.*, 615 Fed. Appx. 518 (11th Cir. 2015) ...............................................................................30

*Green v. MOBIS Alabama, LLC*, 995 F. Supp. 2d 1285 (M.D. Ala. 2014), affd, 613 F. App'x 788 (11th Cir. 2015).........................23

*Hayes v. Clark County*, 291 Fed. App'x 91 (9th Cir. 2008)....................40

*Henderson v. FedEx Express*, 442 F. App'x 502 (11th Cir. 2011)....31, 32

*Higdon v. Jackson*, 393 F.3d 1211 (11th Cir. 2004) ..............................32

iv

*Holifield v. Reno*, 15 F.3d 1555 (11th Cir. 1997) ................................... 40

*Kiel v. Select Artificials, Inc.*, 169 F.3d 1131 (8th Cir. 1999) ............... 32

*Mathis v. Leggett & Platt*, 263 Fed. App'x 9 (11th Cir. 2008) .............. 32

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .......................................................................................... 12

*Mealing v. Ga. Dept. of Juvenile Justice*, 564 Fed.Appx. 421 (11th Cir. 2014) ............................................................................. 23

*Meltzer v. City of Wilmington*, 932 F. Supp. 2d (D. Del. 2013) ............. 40

*Scalone v. Home Depot U.S.A., Inc.*, 280 Fed. App'x 905 (11th Cir. 2008) ................................................................................... 31

*Simmons v. Clark Equipment Credit Corp.*, 554 So.2d 398 (Ala. 1989) .................................................................................. 19, 29

*Sims v. MVM, Inc.*, 704 F.3d 1327 (11th Cir. 2013) ............................ 30

*Smith v. City of Fort Pierce, Fla.*, 565 Fed.Appx. 774 (11th Cir. 2014) ................................................................................................ 23

*Smith v. City of New Smyrna Beach*, 588 Fed.Appx. 965 (11th Cir. 2014) ................................................................................... 23

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993) ........................... 25

*Stebbins v. Legal Aid of Arkansas*, 512 Fed. App'x 662 (8th Cir. 2013) .......................................................................................... 40

*Swanston v. Cahill, et al.*, 25 Fed. App'x 38 (2d Cir. 2001) .................. 40

*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981) ......... 24, 33

*Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361 (11th Cir. 2007) ................................................................................................ 17, 31

*Thompson v. N.A. Stainless, LP*, 131 S.Ct. 863 (2011) ................. 18, 23

*Trask v. Secretary, Dep't of Veterans Affairs*, 822 F.3d 1179 (11th Cir. 2016) ...................................................................30

*Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008) ...........................12

*Underwood v. Perry*, 431 F.3d 788 (11th Cir. 2005) ...........................22

*Univ. of Texas Southwestern Med. Center v. Nassar*, 570 U.S. 338 (2013).............................................................. 18, 23, 30

*Wascura v. City of South Miami*, 257 F.3d 1238 (11th Cir. 2001) ........32

## Statutes

28 U.S.C. § 1291 .................................................................... vii

42 U.S.C. § 2000e-3(a) ...........................................................22

Ala. Code § 8-9A-7 ................................................................29

Ala. Code § 8-9A-8 ................................................................29

## Rules

Ala. R. Prof. Cond. Rule 1.2 cmt. ......................................38, 42

Ala. R. Prof. Cond. Rule 1.7(a) .........................................39, 40

Eleventh Circuit Rule 28-1(m) ...........................................45

Fed. R. App. P. 32(a)(5) .....................................................45

Fed. R. App. P. 32(a)(6) .....................................................45

Fed. R. App. P. 32(a)(7) .....................................................45

Fed. R. App. P. 32(a)(7)(b)(iii) ..........................................45

## <u>STATEMENT OF JURISDICTION</u>

This case arises following the district court's grant of summary judgment in favor of Appellee Marion Bank and Trust and dismissing all Appellants' claims. This court has jurisdiction over the matter under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

A lawyer who represented a Bank as outside counsel began to advise and represent his daughter in a sexual harassment claim *against* the Bank. He also defaulted on repaying the Bank for a business loan despite multiple extensions. Given these undisputed facts, did the district court correctly hold that the lawyer had no reasonable expectation of continuing to receive future business from the Bank, and that the Bank's efforts to collect its loan did not, as a matter of law, constitute "unlawful retaliation" under Title VII – notwithstanding that they occurred after the daughter filed a sexual harassment lawsuit against the Bank?

## STATEMENT OF THE CASE

This is a Title VII third-party retaliation claim by three family members of a woman who previously had filed, and later settled, a sexual harassment lawsuit against her former employer, Marion Bank. Ragan Tolar Livingston (now Youngblood) was fired by Marion Bank after only seven (7) months for erratic behavior and failure to follow instructions. She then filed an EEOC sexual harassment claim against the Bank, followed by a lawsuit alleging she was sexually harassed by the Bank's president, Conrad Taylor. That case was vigorously contested and later was settled.

Meanwhile, one of the Bank's outside attorneys was Ragan's father, Greg Tolar, who handled routine collections and foreclosures. Despite having the Bank as his client, Greg undertook to advise and represent his daughter *against* the Bank in her EEOC claim. Greg and his wife also went to the Bank's board chairman to demand settlement terms after Ragan's termination. The Bank allowed Greg to continue his representation on pending matters, but it decided to stop sending him any new assignments. In addition the Bank, having made Greg a $100,000 business loan on which he failed to make a single payment,

undertook to collect the loan after giving him multiple extensions during which he failed to make a payment.

During the collection process, the Bank learned that Greg was attempting a fraudulent transfer (as a state court judge later found) of his beneficial interest in a family trust, conveying it to his son Reid Tolar. The Bank sought advice from its outside law firm Bradley Arant,[1] which it subsequently hired to file a fraudulent transfer suit against the Tolar Family Trust and Reid Tolar as the intended transferee, naming the trustees (Greg Tolar and his brothers Andrew Tolar and James Michael Tolar) as necessary co-defendants. The Bank sought, and obtained, an injunction. Then Greg filed for bankruptcy, despite the trust being his only reported asset, which he claimed was exempt. The bankruptcy court disagreed and enjoined any distributions, at which time Greg settled with the Bank on terms that included payment from the very Trust assets that the Bank had contended were secretly being held for Greg's benefit all along.

---

[1] The Bradley firm (Bradley Arant Boult & Cummings) is a co-defendant herein, having been dismissed by the Court on a Rule 12 motion. That dismissal now is a subject of the Tolars' appeal, as to which Marion Bank adopts all arguments by Bradley in response.

Soon thereafter Greg Tolar filed this lawsuit, joined by Andrew and Reid, charging that the Bank had undertaken these actions as "unlawful retaliation." They also alleged state tort claims for defamation (i.e., that the lawsuits were defamatory), which were dismissed by the court and not appealed. Doc. 33.

A magistrate judge initially dismissed Greg Tolar's retaliation suit in its entirety under Rule 12, in a combination of two separate written orders. (Doc. 25 & 34). But the Tolars appealed that ruling to the district court, which vacated on procedural grounds. The district court affirmed in part, ruling that the Tolars were entitled to an opportunity to conduct discovery on their retaliation claim. (Doc. 40 at 10). Now, after three contentious years, the district court has reviewed the evidence in a light most favorable to the Tolars and has granted a summary judgment in favor of Marion Bank on all claims.

The district court's forty-three (43) page Memorandum Opinion is the third time the court had ruled in Marion Bank's favor - first the Magistrate Judge on the pleadings, and then the district court on the undisputed evidence - holding that the Tolars' claims fall short of

4

stating a *prima facie* Title VII retaliation claim. For reasons discussed below, the district court should be affirmed.

## I.    The Course of Proceedings and Disposition Below

Appellants Greg, Andrew, and Reid Tolar (the "Tolars") filed the underlying lawsuit in the Northern District of Alabama on January 18, 2013. They alleged that Appellee Marion Bank (including its president Conrad Taylor and the Bank's law firm, Bradley Arant Boult Cummings, LLP) engaged in prohibited third-party retaliation under Title VII of the Civil Rights Act of 1964. A magistrate judge assigned to this case initially dismissed Greg Tolar's claims, partially at first (Doc. 25) and later totally (Doc. 34). The Tolars then filed an appeal to the district court, which partially vacated the magistrate judge's ruling. (Doc. 40 at 10). The district court allowed the Tolars to conduct discovery on their Title VII claims, but it left intact the dismissal of Bank president Conrad Taylor and the law firm Bradley Arant. (*Id.* at 5-10).

When discovery was over, the Bank moved for a summary judgment on the Title VII claims, contending that the Tolars could not demonstrate a *prima facie* case of retaliation, as a matter of law. The

district court agreed. It issued a <u>Memorandum Opinion and Order</u> granting Marion Bank's motion for summary judgment April 23, 2019. The court's 43-page opinion has 26 pages of facts, which are stated in the Tolars' favor, and which the Tolars have not since disputed in either a post-judgment motion or in this appeal.

The Tolars, in their appeal, are challenging the district court's matter-of-law dismissal of their Title VII claims against both Marion Bank and its law firm, Bradley Arant. The Tolars do not challenge the dismissal of the Bank's president Conrad Taylor, or the dismissal of the state law tort claims.

## II.   <u>Statement of the Facts</u>

Marion Bank adopts the district court's 26-page statement of facts as viewed from Appellants' perspective, which Appellants did not object to by filing any post-judgment motion to alter/amend, or challenge on appeal.[2] (See Doc. 103, pp. 3-29) In fact, the Appellants' statement of

---

[2] Certain minor factual details in the district court's <u>Memorandum Opinion and Order</u> are incorrect, and have been repeated in Appellants' brief. For example, Conrad Taylor is not the Bank's "owner" and Ragan Tolar Livingston was not his personal assistant. (Doc. 103 p. 9; Appellant's Brief p. 5). Taylor is one of several shareholders, and Ragan's job was handling collections, in which she reported to another employee. However, given the standard of review, Marion Bank adopts

facts appears to track the district court's statement, with certain notable exceptions. There are some conspicuous omissions, which are set forth below.

1. "Greg Tolar did not pay the loan by the maturity date." (Doc. 103 p. 12). Appellants omitted this statement of fact from the Memorandum Opinion. It is important to understand that Greg Tolar previously had a $100,000 line of credit with Regions Bank, which was nearly maxed out and was being called due. He asked Marion Bank to agree to refinance that unsecured line of credit of $98,416.50, with a new maturity date of January 31, 2009. (Doc. 78-11, pp. 32-33; Doc. 78-16, pp. 7-8, ¶ 18). That was on February 1, 2008, before Marion Bank agreed to hire Ragan Livingston (Youngblood), which was at Greg's request. After Ragan was fired, and while her EEOC claim was pending, Marion Bank agreed to a further request from Greg in March, 2009, to extend the maturity date on his loan to January 30, 2010, provided that he pay a portion of the interest due. (Doc. 78-11, pp. 34-36; Doc. 78-16, pp. 78, ¶ 18). The Bank's vice-president, Preston

the district court's statement of facts for appeal only, unless otherwise stated.

Nichols, said the Bank agreed to that extension "for less than 50 percent of the interest, which is outside of our policy, and . . . I had to get permission from the loan committee to do so." (Doc. 78-3, p. 44, tr. p. 171). However, Greg failed to pay the partial interest, much less the loan balance, by January 30, 2010. (Doc. 78-16, pp. 7-8, ¶ 18; Doc. 78-1, p. 19, tr. pp. 69, 72).

2. "Mr. Nichols testified that Marion Bank stopped referring legal work to Greg because 'he was adversarial to [the bank] in another lawsuit.' Mr. Nichols also cited performance issues with Greg." (Mem. Op., Doc. 103, p. 16). This omission by Appellant ignores the fact that the Bank's decision was based in part on certain client service issues, not just the conflict of interest. (Doc. 78-3 p. 78). However, once it became clear that Greg was advising and representing his daughter, the Bank was uncomfortable continuing in an attorney/client relationship. The Bank didn't take away his current files, which he was allowed to finish; but it elected to not send him any more legal work.

3. "By the time Greg and Marion Bank parted ways in the fall of 2008, the bank had paid Greg about $31,000 since 2005; the bank was paying Greg fees of approximately $3,500 per month on average. In

8

2009, Greg moved his law practice to Prattville, Alabama, due to the loss of income from the bank. Greg estimated that he was grossing about $160,000 per year when he left Marion." (Mem. Op., Doc. 103 p. 17). Appellants, by omitting these facts, give the impression that Greg Tolar was financially dependent (and even that his daughter was financially dependent) on the relatively small volume of collection/foreclosure work Greg was doing for Marion Bank. By the court's estimate, as calculated from Greg's own evidence, he was paid a little over $10,000 annually by the Bank, which is 1/16 of his total revenue of $160,000 per year.

4.    "Greg does not dispute the defaulted debt and does not believe that Marion Bank behaved improperly in filing a collection lawsuit." (Mem. Op., Doc. 103, p. 18). This statement in the district court's opinion, which is omitted in Appellants' brief, factually acknowledges that Marion Bank had a right to expect repayment of its $100,000 loan, and that its collection lawsuit was not inappropriate. A collection lawsuit sometimes necessitates an asset-freeze injunction (which a state court granted) and to enforce that injunction in bankruptcy court (which the bankruptcy court likewise granted) to

9

prevent assets from being dissipated until the creditor's claims can be adjudicated.

5.    "On November 16, 2010, following the failed execution of garnishment against Greg's wages, Greg testified through post-judgment interrogatories that he had no assets to pay Marion Bank's judgment against him." (Mem. Op., Doc. 103, p. 19). This fact in the Memorandum Opinion, which Appellants omit from their statement, shows the inconsistency between Greg's true financial condition and what he was telling Marion Bank when he asked them for loan extensions (even while his daughter was suing them) to forestall any collection actions while he sought to make himself judgment proof by shedding his trust interest.

6.    "When Greg defaulted on his loans with Marion Bank, Greg and Andrew were trustees and income beneficiaries of an irrevocable trust formed by their father, James Tolar." (Mem. Op., Doc. 103, p. 19). This omission from Appellants' brief undercuts their suggestion that Greg's beneficial interest in the trust was not a genuine asset which the Bank could collect against, and therefore that the transfer to his son Reid Tolar had no relevance to Marion Bank's loan. At least two courts

found otherwise, including the state court (which issued an injunction), and the bankruptcy court (which also issued an injunction), decisions which Greg did not appeal.

7.    "Greg made many changes to the trust agreement through the addendum. First, Greg restructured the trustees." (Mem. Op., Doc. 103, p. 20). By leaving out this fact, Appellants seek to downplay the fact that Greg was actively trying to divest himself of a liquid asset in anticipation of the Bank's collection efforts.

8.    "On December 25, 2011, Greg's father, the grantor under the trust agreement, died. In January 2012, Marion Bank learned that Greg had executed an addendum to the family trust. Marion Bank [then] contacted Chris Glenos, a partner at Bradley Arant, to examine whether the bank had collection options relating to the trust addendum." (Mem. Op., Doc. 103, p. 21). These facts, omitted by Appellants in their brief, show that the Bank's collection actions were not lawyer-driven or somehow connected to the law firm's defense of the underlying sexual harassment case. Bradley did not represent Marion Bank in the collection actions or in obtaining the original judgment

against Greg Tolar (Mem. Op., Doc. 103, p. 19), another fact which Appellants omitted.

While the Court must view the facts in a light most favorable to Appellants, Appellants are not entitled to craft an incomplete narrative of events by cherry-picking preferred undisputed facts from the record while omitting others. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) ("Where the **record taken as a whole** could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.") (emphasis added); *see also Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (same). Nor may Appellants inject new "facts" into their argument on appeal. *See Turner v. Burnside*, 541 F.3d 1077, 1086 (11th Cir. 2008) (Court will not consider argument based on facts not appearing in the record). In that vein, the Court should be advised that Appellants have added certain new "facts" that they did not present to the district court in their opposition papers, and which are not supported by the record.

One obvious difference in Appellants' appeal brief is its frequent reference to the underlying "sexual harassment" claim by Ragan Tolar Livingston, including their factual claim that Ragan was financially

dependent upon Greg Tolar. That could be debated. But suffice it to say it is a moot point since, (a) Ragan's own case was already settled and (b) this factual assertion was not presented to the district court. Marion Bank strongly contested Ragan's claim that she was sexually harassed. This Bank is located in a small town, in a small building, where employees sit around a small open space, and the president Conrad Taylor sits in a glass-enclosed office, like a fish bowl. The senior staff who work near the President can see everyone and everything. Most of them are long-tenured employees of many decades. Mr. Taylor has been there his entire adult life. Ragan Livingston proved not a good fit for that environment in the 7 months she worked there, and she was let go due to erratic behavior and failure to follow instructions. Doc. 91-13 at 121-132.[3]

Appellants also appear to inject a new fact not argued to the district court, that "the Bank was not aware of [Greg Tolar's] letter" of

---

[3] Examples of Youngblood's behavior during her time as an employee of Marion Bank include her refusal to answer the phone as instructed, doc. 91-13 at 126-27, outbursts of anger at work, *id*. at 127, complaining of personal problems to her co-workers, *id*. at 129, failing to show up to work when scheduled, *id*. at 131, and excessive tardiness, *id*. at 136.

representation to the EEOC in support of Ragan's claim, and therefore it cannot be true that his conflict of interest was the basis of the Bank's decision to stop sending new work. (Appellant's Br. 9-10). The obvious purpose behind this non-fact is to lay a foundation for Appellants' "pretext" argument later in their brief. Contrary to their brief, however, the district court found that it was undisputed the Bank knew of Greg's role in advising and representing his daughter as early as Greg and Lori Tolar's meeting with Chairman Richardson to advise the Bank of Ragan's claims. (Mem. Op., Doc. 103 at p. 41 n.9 ("[T]he record establishes that the bank was under the impression that Greg was representing Ms. Youngblood [following Greg's meeting with Mr. Richardson].")); *see also* Doc. 78-3 at 70 (Preston Nichols: "[Greg Tolar no longer received work from the Bank] because the bank felt he was adversarial to us … because we took his word for it when he met with Mr. Randy Richardson and told Mr. Richardson that an EEOC claim he would be filing would be forthcoming."); Doc. 78-7, p. 56 (Greg Tolar: "I [told Mr. Richardson] we would be filing an EEOC charge on [Ragan's] behalf."). Appellants do not dispute that fact, but they attempt to introduce confusion by arguing something different on appeal.

Appellants similarly manipulate undisputed facts by repeatedly asserting that, following Greg's meeting with Mr. Richardson, the Bank "exclude[d] Greg from the list of attorneys that other individuals could use to represent them in their closings." Appellant Brief at 41; *see also id*. at 8 ("In addition, the Bank board adopted, for the first time, a list of attorneys approved to conduct legal work involving the Bank."). What the district court actually found was undisputed, and indeed, Appellants have failed to dispute here, is that the list from which Greg's name was excluded was an internal list of attorneys the Bank's board approved to conduct legal work on *behalf* of the Bank. (Mem. Op., Doc. 103 at 16). The obvious purpose in Appellants' deceptive wording is to imply that the Bank not only stopped referring its own legal work to Greg following his adversarial meeting with Mr. Richardson, but that the list somehow functioned to prevent any of the Bank's customers from hiring Greg as well. This assertion is simply contrary to the district court's factual findings, which Appellants do not contest here.[4]

---

[4] It is true that the district court stated that "Greg testified that Marion Bank stopped referring legal work to him and discouraged others from using his services," Mem. Op. Doc. 103 at 38. However, as is indicated by its use of the phrase "Greg testified," the Court based this finding not on the creation of the approved attorneys list but on Greg's

Another new fact not found in the district court's opinion is Appellants' repeated suggestion that the Bank did not have a valid legal basis to challenge Greg's amendments to the Trust, in which he changed the Trustees and beneficiaries and he transferred his beneficial interest to Reid. (*See, e.g.*, Appellants' Brief, pp. 20). Those arguments already had been made and rejected by at least two courts whose rulings the Tolars did not appeal. That includes an Alabama state circuit court which issued an injunction blocking the fraudulent transfer, and a U.S. Bankruptcy Judge enjoining the distribution of any trust assets attributable to Greg's past or present interests in the Family Trust until the issue was resolved. Doc. 103 at 23, 28. Appellants did not challenge the validity of those injunctions, and the district court did not rest its decision on whether there was any error in those court rulings. In fact, they had become *res judicata*.

---

testimony that he "had some clients that talked to [Mr. Taylor] and [Taylor] told them that [Greg] was no longer doing closings for the bank." Doc 78-1 at 145. While Greg Tolar's testimony regarding these encounters is dubious at best, *see id*. at 145-49, the district court, viewing the facts in the light most favorable to Appellants, treated his testimony as fact at this stage. *See* Mem. Op. Doc. 103 at 42.

16

### III.  <u>Standard of Review</u>

This Court reviews the district court's grant of summary judgment *de novo*, viewing the evidence in a light most favorable to the non-movant. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007). "[This Court] may affirm a judgment based on any grounds supported by the record." *Akanthos Capital Mgmt., LLC v. Atlanticus Holdings Corp.*, 734 F.3d 1269, 1271 (11th Cir. 2013).

<u><b>SUMMARY OF THE ARGUMENT</b></u>

This Court should affirm the district court's dismissal of the Appellants' claims because Appellants failed to establish a *prima facie* case of retaliation for any of their claims against the Bank and, alternatively, because they failed to produce sufficient evidence showing that the legitimate, non-retaliatory reasons the Bank produced for each of its actions were merely pretext for retaliation.

In order to survive summary judgment on a Title VII retaliation claim, Appellants must first establish a *prima facie* case of third-party retaliation by showing that Youngblood's exercise of protected conduct was the but-for cause of a materially adverse action taken by the Bank against them. *See Thompson v. N.A. Stainless, LP*, 131 S.Ct. 863, 866

17

(2011); *Univ. of Texas Southwestern Med. Center v. Nassar*, 570 U.S. 338, 360 (2013). Appellants fail to state such a case here.

As an initial matter, the Bank's filing of a claim against Appellants under the Alabama Uniform Fraudulent Transfer Act ("AUFTA") cannot be considered a materially adverse action because a retaliatory litigation claim is only viable where the employer's lawsuit "lacks a reasonable basis in fact or law." Doc. 34 at 30 (*citing Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 748 (1983)). Here, the reasonableness of the Bank's claim is demonstrated by the fact that it was successful in obtaining temporary restraining orders and preliminary injunctions under this claim from both an Alabama circuit court and U.S. bankruptcy court. Doc. 103 at 23, 27-28. Indeed, the Bank's judgments were ultimately satisfied by the very relief it sought in the AUFTA Claim. *Id.* at 28-29. As the reasonableness of the Bank's claim is obvious, the AUFTA claim cannot serve as the basis for Appellants' Title VII retaliation claim as a matter of law.

Nor may Appellants claim that being named as parties in the Bank's AUFTA claim amounts to a materially adverse action taken against them. In order to proceed with its claim, Alabama law

*required* the Bank to include each of the Appellants as a named party. As the transferee of Greg's beneficial interest, Alabama law required the Bank name Reid Tolar as a party in its AUFTA claim. *See Simmons v. Clark Equipment Credit Corp.*, 554 So.2d 398 (Ala. 1989) ("The grantee, where it still retains title to the property...is a necessary party to an action by the grantor's creditors to set aside a conveyance as fraudulent"). Likewise, as trustees of the Family Trust, Greg and Andrew were also indispensable parties, without whom the action could not proceed. *See Braley v. Spragins et al.*, 128 So. 149, 151 (Ala. 1930). Because the Bank had a reasonable basis for filing the AUFTA claim against the Tolar Family Trust, and Alabama law required the Bank to name each Appellant as a party, the AUFTA claim cannot amount to a materially adverse action as a matter of law.

Even if the AUFTA were considered a materially adverse action, the district court rightly found that Appellants failed to state a *prima facie* case for any of their claims because they failed to produce sufficient evidence that Youngblood's exercise of any protected right was the "but-for" cause of any of the Bank's actions. While it is true that each complained of action occurred sometime after Greg Tolar

filed an EEOC claim on behalf of his daughter and against his client the Bank, the district court correctly determined that Greg Tolar's own conduct, and not Youngblood's EEOC claim, was the cause of each of the Bank's actions, specifically finding 1) the Bank filed the AUFTA claim and objected to Greg's proposed bankruptcy plan because Greg had defaulted on two loans and the Bank was seeking to protect its own ability to collect on the judgments rendered against him and 2) the Bank ceased to send legal work to Greg because he had become adverse to the Bank by representing his daughter in her EEOC claim against it. Doc. 103 at 40-43.    As Appellants fail to show that Youngblood's actions, and not Greg Tolar's own conduct, were the but-for cause of any action the Bank took against them, the district court's dismissal of their claims should be affirmed.

Even if Appellants stated a *prima facie* case, the district court's dismissal of their claims should still be affirmed. In a Title VII retaliation case, once a plaintiff states a *prima facie* case of retaliation, the Defendant must then produce legitimate, non-retaliatory reasons for its conduct. *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000). This the Bank has done, stating that it filed the AUFTA claim

and opposed Greg Tolar's bankruptcy plan in order to protect its ability to best collect on the judgments against Greg and that it no longer used Greg's legal services because of the conflict that arose when Greg took an obviously adversarial position against it.

When, as here, an employer produces legitimate, non-retaliatory reasons for its conduct, a plaintiff must then prove, by a preponderance of the evidence, that the employer's reasons are pretextual by showing both that the reasons given are false and that retaliation was the real reason for the employer's conduct. *See Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006). This Appellants have utterly failed to do. Indeed, aside from rank speculation and half-truths, Appellants offer no evidence of pretext whatsoever. As Appellants both fail to state a *prima facie* case of retaliation under Title VII and fail to produce sufficient evidence that any of the Bank's proffered reasons for its conduct are pretextual, this Court should affirm the district court's grant of summary judgment dismissing each of Appellants' claims.

## ARGUMENT

Title VII prohibits employers from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge . . . under [Title VII]." 42 U.S.C. § 2000e-3(a). The United States Supreme Court has held that Title VII's anti-retaliation provision includes protection from third-party reprisals. *Burlington Northern & Santa Fe Ry., Co. v. White*, 548 U.S. 53, 67 (2006). When, as here, a plaintiff's claims are based on circumstantial evidence, the *McDonnell Douglas* burden-shifting analysis applies. *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1310 (11th Cir. 2016). Under this framework, a plaintiff must first present evidence sufficient to establish a *prima facie* case of retaliation, which "creates a rebuttable presumption that the employer acted illegally." *Underwood v. Perry*, 431 F.3d 788, 794 (11th Cir. 2005).

To establish a *prima facie* case of third-party retaliation, a plaintiff must show: (1) that he is a *person aggrieved* who falls within the *zone of interests* sought to be protected by Title VII; (2) that he suffered a *materially adverse action*; and (3) that there was a *causal connection* that was the "*but/for*" cause between the protected activity

22

and the materially adverse action. *See Thompson v. N.A. Stainless, LP*,

131 S.Ct. 863, 866 (2011); *Nassar*, 570 U.S. at 360 (2013).[5]

---

[5] Appellants misstate the law regarding the causation standard that must be met in order to establish a *prima facie* case of retaliation under Title VII. *See* Appellants' Initial Brief at 48 (Arguing that a plaintiff need only prove that the protected activity and the negative employment action are not "completely unrelated," citing *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1278 (11th Cir. 2008) and *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985)). As the United States Supreme Court made clear in *University of Texas Southwestern Medical Center v. Nassar*, "Title VII retaliation claims must be proved according to traditional principles of but-for causation" prohibiting use of the "motivating factor" standard Appellants argue for here. 570 U.S. 338, 360 (2013); *see also Mealing v. Ga. Dept. of Juvenile Justice*, 564 Fed.Appx. 421, 426-27 (11th Cir. 2014) (acknowledging that a plaintiff claiming retaliation must show but-for causation); *Smith v. City of New Smyrna Beach*, 588 Fed.Appx. 965, 981 (11th Cir. 2014) (same); *Smith v. City of Fort Pierce, Fla.*, 565 Fed.Appx. 774, 779 (11th Cir. 2014) (affirming summary judgment based on plaintiffs failure to establish but-for causation as element of the *prima facie* case). In addition, arguments similar to the one advanced by Appellants have been rejected by multiple district courts in this Circuit, with one such judgment having later been affirmed on an appeal to this Court. *See Green v. MOBIS Alabama, LLC*, 995 F. Supp. 2d 1285, 1306 (M.D. Ala. 2014), affd, 613 F. App'x 788 (11th Cir. 2015) ("The Court does not believe that the causation standard for Title VII retaliation claims in *Simmons v. Camden County Board of Education* and its progeny remain good law in the wake of *Nassar*.); *Diaz v. Fla.*, 219 F. Supp. 3d 1207, 1220 (S.D. Fla. 2016) ("Defendant maintains that in order to show causation, Diaz's complaint must be the but-for cause of her termination, citing *University of Texas Southwest Medical Center v. Nassar*. On the other hand, Diaz argues that she need only show that the protected activity and adverse action are not wholly unrelated, citing *Goldsmith v. Bagby Elevator Company*. Defendant's statement of the showing required is accurate.") (internal citations omitted).

If a plaintiff establishes a *prima facie* case, the employer must then "come forward with legitimate reasons" for its conduct to negate the inference of retaliation. *Chapman*, 229 F.3d at 1024. At this stage, "the employer's burden is merely one of production; it need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.*[6] [7]

---

[6] Appellants also misstate the law as relates to the burden placed on a defendant when responding to a Plaintiff's *prima facie* case, arguing that the Bank failed to produce "sufficient evidence to establish, *beyond a reasonable doubt*, that the Bank's actions [were based on the Bank's proffered reasons]." Appellant Brief at 45 (emphasis added). As the burden on the Bank is merely one of production, and the burden of persuasion "remains at all times with the plaintiff," *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981), the Defendant obviously need not carry such a heavy load. Rather, all that is necessary is that the Defendant "clearly set forth, through the introduction of admissible evidence, the reasons for [its actions]." *Id.* As is discussed more fully below, this burden is more than met here.

[7] Appellants argue that because the Bank did not waive the attorney-client privilege below the Bank's proffered reasons are somehow factually insufficient to satisfy its burden. As the Bank "clearly sets forth, through the introduction of admissible evidence, the reasons for [its actions]," *Burdine*, 450 U.S. at 256, without relying on any inference from its privileged communications with its attorneys, the privileged communications are irrelevant here.

24

Once the employer produces a legitimate, non-discriminatory reason for its actions, "the presumption of discrimination is eliminated," *id.*, and the plaintiff must then "demonstrate, by a preponderance of the evidence, that the employer's reasons are pretextual." *Furcron*, 843 F.3d at 1310-11; *see also Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (The court "must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered [nonretaliatory] reasons to permit a reasonable fact finder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.") (quoting *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994)). In order to satisfactorily show that an employer's proffered reason is pretextual, a Plaintiff must produce evidence showing either 1) that the employer's stated motivation is obviously unreasonable or 2) that the employer failed to give an honest explanation for its behavior *and* that the employer's actions were, in fact, unlawfully motivated. *See Chapman*, 229 F.3d at 1025 n.11, 1030; *see also Brooks*, 446 F.3d at 1163 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) ("A reason is not pretext for discrimination "unless it is shown *both* that the reason

was false, *and* that discrimination was the real reason.") (emphasis in original). Appellants Greg Tolar, Andrew Tolar, and Reid Tolar fail to meet their burden here.

## I.    **Appellants failed to establish a *prima facie* case of retaliation for any alleged adverse action.**

The district court correctly dismissed the Tolars' claims because they failed to establish a *prima facie* case of retaliation. Even if they could, the Bank articulated legitimate reasons for its actions, and Appellants have failed to produce sufficient evidence that the Bank's articulated reasons were purely pretextual.

### A.    **The Bank's AUFTA claim was reasonably justified given Greg Tolar's attempt to shield his assets from collection**

The Bank's AUFTA claim cannot serve as the basis for a Title VII retaliation claim because it had a reasonable basis in fact and law for bringing the claim.[8] As the district court noted, a retaliatory litigation

_____

[8] Greg Tolar bases his Title VII third-party retaliation claim against the Bank on the AUFTA claim the Bank filed to protect its ability to collect on the judgments it held against him, the Bank's objection to his proposed bankruptcy plan, and the Bank's decision to no longer send him legal work after he took an adverse position against the Bank by representing Youngblood in her EEOC charge against it. Appellants Andrew and Reid Tolar, however, base their third-party retaliation claim solely on the Bank's AUFTA claim filed to collect on the judgments it held against Greg Tolar.  For the reasons following,

26

claim is only viable where the employer's lawsuit "lacks a reasonable basis in fact or law." Doc. 34 at 30 (*citing Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 748 (1983)). Such a reasonable basis is obvious here.

The Bank had a reasonable basis in both fact and law for filing the AUFTA Claim.  It is undisputed that Greg Tolar defaulted on two loans with the Bank. Doc. 103 at 12-13. After the Bank filed suit for collection on defaulted loan 171733, and while the Bank was attempting to work with Greg to collect on loan 175647, Greg made fundamental changes to a family trust in which he was a trustee and beneficiary. *Id.* at 19. Acting as trustee, beneficiary, and attorney, he prepared and executed an Addendum that removed his beneficial interest in the Family Trust and designated instead his son Reid and three of his brothers (including Andrew) as beneficiaries. *Id.* at 20. The addendum expressly granted the trustees, which included Greg, the discretion and power to dissolve the Family Trust at any time and to pay out the entire corpus to the newly designated beneficiaries. *Id.*

---

the district court's grant of summary judgment dismissing the claims of each Appellant in their entirety should be affirmed.

Upon learning of this addendum in early 2012 and that the trustees were in the process of liquidating the Trust's assets for distribution, the Bank hired Bradley Arant Boult Cummings to evaluate the Bank's ability to collect on Greg's judgments, ultimately leading to the filing of the AUFTA Claim. Doc. 103 at 20-23. The reasonableness of the Bank's claim is ultimately demonstrated by the fact that the Bank was successful in obtaining temporary restraining orders and preliminary injunctions in both an Alabama circuit court and the U.S. bankruptcy court to restrain and enjoin Reid and the other trustees from making distributions or transfers of any assets attributable to Greg Tolar's past or present beneficial interest in the Family Trust. Doc. 103 at 23, 27-28. Indeed, the Bank's judgments were ultimately satisfied by the very relief it sought in the AUFTA Claim. *Id.* at 28-29. These facts confirm that the Bank, through its counsel, had a reasonable basis to assert a fraudulent transfer action against Reid Tolar and the Family Trust to protect its ability to collect on Greg's defaulted loans. *See id.* at 20-29; *see also* Doc. 78-15, p. 55, PX 82, Resp. to Third Inquiry. Thus, the AUFTA claim cannot amount to a *material* adverse action under Title VII, as a matter of law.

Nor may Appellants claim their status as named parties in the Bank's AUFTA claim amounts to a materially adverse action taken against them. In order to proceed with its claim, Alabama law *required* the Bank to include each of the Appellants as a named party. As the transferee of Greg's beneficial interest, Alabama law required the Bank name Reid Tolar as a party in its AUFTA claim. *See* Ala. Code §§ 8-9A-7 and 8-9A-8; *Simmons v. Clark Equipment Credit Corp.*, 554 So. 2d 398 (Ala. 1989) ("The grantee, where it still retains title to the property...is a necessary party to an action by the grantor's creditors to set aside a conveyance as fraudulent"). Likewise, as trustees of the Family Trust, Greg and Andrew were indispensable parties,[9] without whom the action could not proceed. *See Braley v. Spragins et al.*, 128 So. 149, 151 (Ala. 1930). Thus, the Bank had a reasonable basis in fact and in law for filing its AUFTA claim, and a reasonable basis in fact and in law for naming each Appellant as a party. The AUFTA claim cannot amount to a *material* adverse action under Title VII, as a matter of law.

---

[9] The Bank's AUFTA Complaint against the Family Trust named Greg and Andrew in their representative capacities as trustees, and did not seek any relief against them individually.

29

Even if the AUFTA claim was deemed a materially adverse action, Appellants' *prima facie* case fails because they cannot prove but-for causation. A plaintiff asserting a retaliation claim under Title VII must proffer evidence "that the desire to retaliate was the but-for cause of the challenged [retaliatory] action." *Nassar*, 570 U.S. at 352; *see also Trask v. Secretary, Dep't of Veterans Affairs*, 822 F.3d 1179, 1194 (11th Cir. 2016). The but-for standard "is more demanding than the motivating-factor standard" that applies in Title VII discrimination claims. *Nassar*, 570 U.S. at 362. A "'but-for' cause requires a closer link than mere proximate causation; it requires that the proscribed animus have a determinative influence on the employer's adverse" action. *Sims v. MVM, Inc.*, 704 F.3d 1327, 1335-36 (11th Cir. 2013) (ADEA action); *see also Godwin v. WellStar Health System, Inc.*, 615 Fed. Appx. 518, 526 (11th Cir. 2015) (citing *Sims*) (ADEA action). In other words, in order to show but-for causation here, Appellants must demonstrate that, absent Youngblood's EEOC claim, the Bank would not have protected its ability to collect the debt Greg Tolar owed it by filing the AUFTA claim and naming each Appellant as a party, as was required under Alabama law.

30

Appellants offer insufficient evidence of a causal connection between Ms. Youngblood's EEOC Charge or lawsuit and the filing of the AUFTA claim. As an initial matter, the time-line eliminates any notion that Ms. Youngblood's sexual harassment claim could be considered the but-for cause of the Bank's action based on temporal proximity alone. The alleged adverse action—the AUFTA Claim—was filed in February 2012, over three (3) years after Greg Tolar's daughter filed her EEOC Charge and over nine (9) months after she filed her Title VII lawsuit. Doc. 103 at 10-11, 21-22. Even much shorter delays are insufficient as a matter of law to support a claim of retaliation based on temporal proximity alone. *See, e.g., Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough [to show causation based on temporal proximity alone."]); *Henderson v. FedEx Express*, 442 F. App'x 502, 506 (11th Cir. 2011) ("If there is a delay of more than three months between the two events, then the temporal proximity is not close enough, and the plaintiff must offer some other evidence tending to show causation."); *Scalone v. Home Depot U.S.A., Inc.*, 280 Fed. App'x 905, 909 (11th Cir. 2008) (five month

31

delay); *Higdon v. Jackson*, 393 F.3d 1211, 1221 (11th Cir. 2004) (three month delay); *Mathis v. Leggett & Platt*, 263 Fed. App'x 9, 14 (11th Cir. 2008) (five month delay); *Wascura v. City of South Miami*, 257 F.3d 1238, 1245 (11th Cir. 2001) (three and a half month delay).

Even if the delay between Youngblood's EEOC filing and the Bank's AUFTA claim were shorter, Greg's own unprotected conduct eviscerates any inference of causation that may have arisen from temporal proximity. *See Henderson v. FedEx Express*, 442 F. App'x 502, 507 (11th Cir. 2011) (citing *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (*en banc*) (Intervening conduct erodes any inference of causation based on temporal proximity alone). As the district court noted, the evidence strongly indicates that the Bank's filing of the AUFTA claim was motivated not by retaliatory animus, but rather by Greg's own conduct in defaulting on the loans issued to him by the bank and his attempt to prevent the bank from collecting on its judgment against him. Doc. 103 at 40-43. It was Greg Tolar's own conduct, and not Youngblood's filing of an EEOC charge, that was the "determinative factor" in the Bank's filing of the AUFTA claim. Appellants thus fail to make a *prima facie* case of retaliation on this issue.

Even if Appellants could establish a *prima facie* case, which they cannot, the Bank is entitled to summary judgment because it filed the AUFTA Claim for a legitimate, non-retaliatory business reason. The Bank's legitimate, non-retaliatory reason for filing the AUFTA Claim— to protect its ability to collect the judgments against Greg—rebuts any inference of retaliation.[10]

In light of this legitimate, non-retaliatory reason, the burden shifts back to Appellants to establish by a preponderance of the evidence that the Bank's proffered reason is dishonest and that its actions were actually motivated by an unlawful desire to retaliate. *See Chapman*, 229 F.3d at 1025 n.11, 1030; *see also Brooks*, 446 F.3d at 1163 (11th Cir. 2006). Appellants have failed to meet this burden, and have in fact failed to offer *any* evidence that the Bank's articulated reason was a mere pretext for retaliatory litigation. If anything, the evidence strongly supports the Bank's claim that its motivation was to protect its interest in collecting the debt owed it by Greg Tolar. Greg

---

[10] Among other evidence produced by the Bank, the Bank's designated Rule 30(b)(6) witness testified that this was the reason for the AUFTA Claim in his deposition. *See, e.g.*, Doc. 78-3 at 194, 207. As this "clearly sets forth" the reasons for the Bank's actions, its burden of production is met. *See Burdine*, 450 U.S. at 256.

admits that the Bank obtained judgments against him on his defaulted loans. Doc. 78-1 at 69-72. It was not until after the Bank learned of the Addendum to the Family Trust, the creation of which was wholly independent of Ms. Youngblood's EEOC claim or lawsuit, that the Bank began pursuing the AUFTA Claim to collect on the judgments. Doc. 103 at 21-22. The Bank has filed other fraudulent transfer actions to protect its ability to collect its debts, as all banks must. Doc. 78-3 at 217-20. As Appellants have failed to offer sufficient evidence that the Bank's articulated reason was pretextual, their retaliation claim fails as a matter of law.

### B.    The Bank had legitimate reasons for opposing Greg Tolar's proposed bankruptcy plan

The district court rightly granted summary judgment dismissing Appellants' claim that the Bank unlawfully objected to Greg's proposed bankruptcy plan as an act of retaliation. As with the AUFTA claim, Appellants failed to establish a *prima facie* case of retaliation because they failed to show Youngblood's actions, rather than Greg Tolar's own conduct, was the determinative factor in the Bank's filing its objection to Greg's discharge.

Undisputed facts show that Greg Tolar was facing two judgments against him in favor of the Bank. Doc. 103 at 12-13. It also is undisputed that at the time Greg filed for bankruptcy, he had not made payments toward reducing either judgment; that he had prepared and executed the Addendum removing himself as a beneficiary of the Family Trust; and that a state circuit court had entered a preliminary injunction enjoining the Family Trust from making any distributions attributable to Greg's beneficial interest. *Id*. at 21-23. The undisputed evidence further demonstrates that Greg attempted to perpetrate additional transfers by placing title to his residence solely in his wife's name after defaulting on his loans, and only re-conveyed interest in his residence back to himself the day before filing for bankruptcy. Doc 78-21 at 7.  Thus, based on Greg's own actions in attempting to shield his assets from collection, the Bank had a reasonable basis for asserting that Greg had access to enough money to satisfy the judgments against him immediately, a belief the circuit court's and bankruptcy court's rulings confirmed. Doc. 103 at 23, 27-29. Even if Greg had not attempted to shield his assets from collection, the Bank would still have had a legitimate reason for rejecting his proposed plan, as it failed

provide for payment of any post-bankruptcy interest. *Id.* at 27. Thus, the district court correctly found that the but-for cause of the Bank's opposition was not retaliatory animus, but rather Greg's own attempt to shield his assets from collection and the Bank's legitimate need to protect its own financial best interests. Its issuance of summary judgment is due to be affirmed.

Even assuming Appellants could establish a *prima facie* case, which they cannot, the Bank is entitled to summary judgment because it objected to Greg's bankruptcy for a legitimate, non-retaliatory reason. The Bank's legitimate, non-retaliatory reason for objecting to Greg's bankruptcy plan—to protect its ability to collect on the judgments against Greg and the fact that his plan failed to account for the time-value of money—rebuts any inference of retaliation.[11]

Finally, Appellants have presented no evidence that the Bank's proffered reasons were mere pretext. The evidence, in fact, points

---

[11] Among other evidence produced by the Bank, the Bank's designated Rule 30(b)(6) witness testified that the Bank objected to Greg's proposed plan because it believed he had access to sufficient funds to satisfy his debt. *See, e.g.*, Doc. 78-3 at 230. Additional admissible evidence states that an additional reason the Bank objected to Greg's plan was because it did not account for the lost time value of money. *See* Doc. 78-19 at 65.

36

strongly in favor of the Bank's stated motivation. Greg admitted that his bankruptcy plan did not provide for immediate, full payment of the Bank's judgments or post-bankruptcy interest. Doc. 78-1 at 161-62. The Bank had a history of objecting to other debtors' bankruptcy plans to protect its ability to collect its debts, including objections filed by Greg Tolar himself in his capacity as counsel for the Bank. *Id.* at 67, 169; Doc. 78-16 at 12. Moreover, it is undisputed that creditors routinely file objections to 100% plans. *See* Doc. 78-15, p. 71-74, PX 82. Resp. to Sixth Inquiry. As Appellants failed to offer any evidence that the Bank's articulated reasons for its bankruptcy objection were merely pretextual, the district court's grant of summary judgment dismissing their claim was appropriate.[12]

---

[12] No matter the Appellant claiming injury stemming from the Bank's opposition to Greg's bankruptcy plan, the analysis remains the same. Appellants cannot establish a *prima facie* case of retaliation because the but-for cause of the Bank's opposition was Greg Tolar's own conduct, namely his attempts to shield his assets from collection and his failure to account for the time-value of money. Even if Appellants could state a *prima facie* case, the Bank stated its reason for its opposition was to protect its ability to collect on its judgments against Greg and his failure to provide for post-bankruptcy interest, and Appellants have produced no evidence that the Bank's reasons were pretextual.

### C.    The Bank rightly stopped sending Greg Tolar legal work after he became directly adverse to it

As an initial matter, as outside counsel, Greg Tolar had no expectation or entitlement to receive future legal work from the Bank. To the contrary, the Rules of Professional Conduct gave the Bank an absolute right to terminate Greg's representation at any time. *See* Ala. R. Prof. Cond. Rule 1.2 cmt. (client may not be asked by lawyer to "surrender the right to terminate the lawyer's services"). Greg therefore had no valid claim of retaliation against the bank for its decision to no longer send him new legal work after he undertook his daughter's case *against* the Bank.

Even assuming, *arguendo*, that Title VII somehow binds the Bank to continue an undesired attorney-client relationship, Appellants cannot show that Youngblood's EEOC charge, rather than Greg's own decision to take an adversarial stance against his client, was the but-for cause of the Bank's decision to cease working with Greg Tolar. The record is replete with undisputed evidence that Marion Bank believed Greg had assumed an adversarial role against the Bank as early as his initial meeting with Mr. Richardson. *See* Mem. Op., Doc. 103 at p. 41 n.9 ("[T]he record establishes that the bank was under the impression that

38

Greg was representing Ms. Youngblood [following Greg's meeting with Mr. Richardson].”); *see also* Doc. 78-3 p. 70 (Preston Nichols: “[Greg Tolar no longer received work from the Bank] because the bank felt he was adversarial to us … because we took his word for it when he met with Mr. Randy Richardson and told Mr. Richardson that an EEOC claim he would be filing would be forthcoming.”); Doc. 78-16 p. 5; Doc 78-17 p. 4-5; Greg Tolar Deposition, Doc. 78-7, p. 17 (Greg Tolar: “Well, when I filed the EEOC claim on behalf of my daughter, they took me off their real estate closing list.”), p. 56 (Greg Tolar: “I [told Mr. Richardson] we would be filing an EEOC charge on [Ragan's] behalf.”). It is undisputed that when Greg complained to Richardson on behalf of Ms. Youngblood, he still represented the Bank as its attorney, and, therefore, had a duty of loyalty to the Bank. See Ala. R. Prof. Cond. Rule 1.7(a). It is both reasonable and factually undisputed that the Bank perceived Greg's complaint and representation of Ms. Youngblood relative to her legal claims against the Bank as directly adverse and a serious conflict of interest. *See* Doc. 103 at p. 41 n.9. As the magistrate judge rightly noted:

> Using Occam's razor, it makes little sense to suppose that the Bank's decision to cease working with Greg might have

been undertaken as a means by which to retaliate *indirectly* against *Ragan* for *her* protected activity rather than simply as an action taken *directly* against *Greg* because of his *own* unprotected conduct whereby he admittedly took an unambiguous stance against the Bank on the very same matters."

*See* Doc. 34, p. 33 (emphasis in original). Courts consistently have held that an employer has a legitimate, nondiscriminatory reason for terminating an attorney-client relationship when it becomes uncomfortable about a real or potential conflict of interest. *See* Ala. R. Prof. Conduct Rule 1.7(a); *see also Stebbins v. Legal Aid of Arkansas*, 512 Fed. App'x 662, 664 (8th Cir. 2013) (conflict of interest was legitimate, non-retaliatory reason for declining representation); *Hayes v. Clark County*, 291 Fed. App'x 91 (9th Cir. 2008) (the avoidance of any apparent or actual conflict of interest was legitimate, non-retaliatory reason for decision); *Meltzer v. City of Wilmington*, 932 F. Supp. 2d (D. Del. 2013) (potential conflict of interest was legitimate, non-retaliatory reason for actions taken towards attorney). Greg's assertion of his own personal "belief" that no conflict existed is immaterial and insufficient to establish pretext. *See Holifield v. Reno*, 15 F.3d 1555, 1565 (11th Cir. 1997); *see also Swanston v. Cahill, et al.*, 25 Fed. App'x 38 (2d Cir. 2001) (attorney's assertion of her own belief that she did not violate conflict-

40

of-interest rules was insufficient to rebut state's assertion, in Title VII action, that attorney was terminated because of her violation of those rules). As it was Greg Tolar's own decision to take an adversarial stance against his client, rather than Youngblood's decision to file an EEOC charge, that was the but-for cause of the Bank ceasing to send Greg legal work, Appellants fail to state a *prima facie* case of third-party retaliation as a matter of law.

Even if Appellants established a *prima facie* case, the Bank is still entitled to summary judgment because it produced a legitimate, non-retaliatory reason for no longer sending Greg its legal work—the obvious conflict of interest that arose when Greg took an adversarial stance against it.   As the Bank has produced a legitimate, non-retaliatory reason for its actions, the burden shifts to Appellants to show that the Bank's stated motivations are mere pretext for retaliation.

Appellants' "evidence" of pretext is manufactured and woefully insufficient. Contrary to Appellants' assertions, undisputed evidence shows that the Bank believed itself to be adverse to Greg Tolar beginning with his initial meeting with its Board president, not its

41

receipt of Youngblood's formal complaint. *See* Doc. 103 at p. 41 n.9 ("[T]he record establishes that the bank was under the impression that Greg was representing Ms. Youngblood [following Greg's meeting with Mr. Richardson]."). Nor did the Bank claim it ceased to hire Greg solely because he defaulted on his loans. To the contrary, the Bank's corporate representative cited the conflict of interest, the defaulted loans, and performance issues as reasons the Bank decided to no longer utilize Greg Tolar's legal services. Doc. 29 Tab A p. 3. Finally, whether the Bank "raised the issue of conflict" with Greg to allow him to "cure" it is immaterial to the question of pretext, as the Bank had an absolute right to terminate Greg's representation at any time. *See* Ala. R. Prof. Cond. Rule 1.2 cmt. As Appellants have failed to offer any other evidence that the Bank's articulated reason is pretext for retaliatory litigation, the district court's grant of summary judgment is due to be affirmed.

## <u>CONCLUSION</u>

The district court correctly granted summary judgment in favor of the Bank dismissing Appellants Greg Tolar, Andrew Tolar, and Reid Tolar's claims in their entirety. Appellants failed to establish a *prima facie* case of third-party retaliation showing that Ms. Youngblood's

exercise of her Title VII rights was the determining factor for any of the Bank's actions against Appellants. Even if Appellants made a *prima facie* case, summary judgment was still proper in light of the legitimate reasons for each of the Bank's actions because Appellants have produced insufficient evidence that any of the Bank's proffered reasons were merely pretextual. The judgment of the district court should be AFFIRMED.

Respectfully submitted,

 *s/ Forrest S. Latta*
FORREST S. LATTA
KATHRYN M. WILLIS
R. SCOTT WILLIAMS
CHRISTOPHER S. BURKHALTER

Attorneys for Appellee, Marion Bank and Trust

OF COUNSEL:

Forrest S. Latta
Kathryn M. Willis
Christopher S. Burkhalter
BURR & FORMAN LLP
11 North Water Street
Suite 22200
Mobile, Alabama 36602
Telephone: (251) 344-5151
Facsimile: (251) 344-9696

43

Email:       Forrest.Latta@burr.com
             KWillis@burr.com
             CBurkhalter@burr.com


R. Scott Williams
BURR & FORMAN LLP
420 North 20th Street
Suite 3400 Wells Fargo Tower
Birmingham, Alabama 35203
Telephone:(205) 251-3000
Email:       SCWilliams@burr.com

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Eleventh Circuit Rule 28-1(m), this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because this document contains 10,304 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(b)(iii).

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Century Schoolbook 14 point type.

*s/ Forrest S. Latta*
OF COUNSEL

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2019, a copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system, which will serve it on the following CM/ECF participants:

Alicia K. Haynes, Esq.
Charles E. Guerrier, Esq.
Haynes & Haynes, P.C.
1600 Woodmere Drive
Birmingham, AL 35226
akhaynes@haynes-haynes.com
ceguerrier@haynes-haynes.com

Bruce F. Rogers, Esq.
Bainbridge, Mims, Rogers & Smith, LLP
600 Luckie Drive, Suite 415
Birmingham, AL 35223
brogers@bainbridgemims.com

*s/ Forrest S. Latta*
OF COUNSEL